# United States District Court

## SOUTHERN DISTRICT OF FLORIDA

### UNITED STATES OF AMERICA

v.

**RICHARD MCLAUGHLIN, SR.**

CRIMINAL COMPLAINT

FILED by _____ D.C.

MAR - 5 2008

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. • FT. PIERCE

CASE NUMBER: 08-09-FJL

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about <u>January 16, 2008 through March 3, 2008</u>, in <u>St. Lucie County</u>, in the <u>Southern</u> District of <u>Florida</u>, the defendant,

> used a facility, a computer, in interstate commerce, to persuade, induce, or entice an individual under the age of 18 to engage in sexual activity,

in violation of Title <u>18</u> United States Code, Section <u>2422(b)</u>.

I further state that I am a <u>Senior Special Agent, Immigration and Customs Enforcement</u> and that this Complaint is based on the following facts:

*PLEASE SEE ATTACHED AFFIDAVIT.*

Continued on the attached and made a part hereof: ___X___ YES ____ NO

Signature of Complainant
CHRISTOPHER S. HARVEY
Senior Special Agent
Immigration and Customs Enforcement

Sworn to before me, and subscribed in my presence,

March 5 , 2008
Date

at Fort Pierce, Florida
City and State

FRANK J. LYNCH, Jr.
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

3

**AFFIDAVIT OF
CHRISTOPHER S. HARVEY
SENIOR SPECIAL AGENT
DEPARTMENT OF HOME LAND SECURITY
BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT**

I, Christopher S. Harvey, after being duly sworn, depose and state:

1.    I am a Senior Special Agent (SS/A) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE) having been so since March 2003.  Prior to March 2003, I was employed by the U.S. Customs Service as both a Special Agent and a Marine Enforcement since 1998 and prior to that, as a Deputy Sheriff since 1996. I have been assigned to the investigation of cases involving the sexual exploitation of children. These investigations have included the utilization of surveillance techniques, undercover activities, the interviewing of subjects and witnesses, and the planning and execution of search, arrest and seizure warrants. I have also received training on the aforementioned investigations at the Federal Law Enforcement Training Center in Glynco, Georgia.

2.    I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 United States Code.  That is, I am an officer of the United States, who is empowered by law to conduct investigations of and make arrests for, offenses enumerated in Title 18, United States Code, Sections 2422, *et seq.*

1

3.    I am conducting an investigation involving the sexual exploitation of children and related activities of the individual named herein. I have personally participated in the investigation of the offenses referred to herein, and because of my personal participation in this investigation and reports made to me by members of the participating law enforcement agencies, I am familiar with the facts and circumstances of this investigation.    I have participated in investigations involving pedophiles, preferential child molesters, and persons who collect and/or distribute child pornography, along with the importation and distribution of materials relating to the sexual exploitation of children.   I have received training in the area of child pornography and child exploitation through the U.S. Customs Academy.   I have observed and reviewed examples, and assisted in several child pornography and child exploitation investigations, which has involved reviewing examples in all forms of media including computer media, and have discussed and reviewed these materials with other law enforcement officers.

4.    Many of the facts pertaining to this case have been relayed to me by Detective Neil Spector of the St. Lucie County Sheriff's Office, located in Florida.

5.    Although I am familiar with the full breadth of the facts and circumstances of this investigation, I have not included in the

2

affidavit each and every fact known to me about the matters set forth herein, but only those facts and circumstances that I believe are sufficient to establish probable cause for this Court to authorize the arrest of Richard McLaughlin, Sr.

6.    This affidavit is made in support of a criminal complaint against Richard McLaughlin, Sr., for violations of Title 18 U.S.C. Section 2422(b), that is, use of a facility, a computer, in interstate or foreign commerce, to persuade, induce, or entice an individual under the age of eighteen to engage in sexual activity.

7.    Detective Neil W. Spector is a detective with the St. Lucie County Sheriff's Office, Criminal Investigations Division. Detective Spector is a member of the LEACH Task Force, which is a combined force of local, state and federal law enforcement officers who proactively investigate child pornography and child exploitation on the Internet. It should be noted that during the conversations that follow, Det. Spector is communicating from St. Lucie County, in the Southern District of Florida, using America Online (AOL), whose servers are located in the State of Virginia. According to AOL, all communications on their network travel from the origination point, through AOL's servers in Virginia, and on to the destination.

3

8.    During this investigative affidavit/report, there will be

terms such as the following:

Instant message: Where two individuals can communicate in text
privately.

Chat room: where members of a specific Internet service
provider, in this case AOL can communicate in text message where
other members in the chat room can observe and communicate.

Electronic mail (Email): An electronic message that you can send
to an individual(s) and attach images and or other data.

Instant message: Where two individuals can communicate in text
privately.

During this affidavit, you will see grammatical and spelling

errors, as this is common when communicating using text messages on

the Internet.

For the purposes of this affidavit/report the suspect's screen name

will be referred to as "the suspect".   Detective Spector will be

referred to as "the undercover".

9.     On January 16, 2008, Detective Spector was working in an

undercover capacity utilizing America Online as his Internet service

provider. Detective Spector was portraying an adult male with a

prepubescent daughter.    Detective Spector was in a chat room called

"open minded parents".

4

10.     On January 16, 2008, at 3:55PM, the suspect's screen name
of "RmClaug1960" initiated an instant message by writing "phone chat
here u want my number to call me".   During this instant message, the
suspect   introduced   himself   as   Rich,   age   forty-seven,   from
Massachusetts. The suspect immediately provided the undercover with
a phone number of 339-532-7577.   The undercover indicated to the
suspect he had an eleven-year-old daughter who lives with him. The
undercover also indicated that his daughter is mentally challenged.

11.   At approximately 4:02PM, the undercover called the suspect
at 339-532-7577.   The suspect identified himself as "Rich".   The
suspect indicated he uses a web camera to allow people to see him.
The suspect indicated he was interested in "family sex, young stuff".
The   suspect   stated   that   he   previously   sexually   molested   his
eight-year-old niece. The suspect stated the last time he molested
his niece was last Christmas.   He indicated his niece lives in
California   and   she   was   visiting   him.    The   suspect   told   the
undercover,"I'm not a cop" and "I have a cam I would love to show you
and my your daughter my dick."

12.     While on the telephone, the suspect sent an electronic
link to the undercover. The link was called "Secret Lolita CP
BBS---Already 10 years Online".   The undercover opened the link,
which contained the name "PTHC BBS ZEPS RANCHI MUMMY".   The site

5

contained numerous images of prepubescent children engaged in various sexual acts. These images are considered lewd and lascivious in nature and are child pornography. There were four pages, which the undercover printed for evidentiary purposes.

13.   During the phone call, the suspect said he had numerous images like the one he sent the undercover. This call was digitally recorded for evidentiary purposes.

14.   The Internet instant messaging continued and the undercover indicated his daughter was home.   The suspect wrote "just tell her its time to play with dad now".

15.   On January 16, 2008, the undercover called the suspect again at 339-532-7577.   The suspect answered the phone and told the undercover to hold on because he had an incoming call from his wife. After speaking to his wife, the suspect asked the undercover if his "daughter" was inside the residence.   The suspect asked the undercover to show his "daughter" the images (child pornography) he sent via the electronic link. During the phone call, the undercover heard the suspect masturbating.   The suspect asked the undercover to molest his "daughter" while talking to the suspect.   The undercover told the suspect he needed to go and the call was abruptly terminated. This phone conversation was digitally recorded for evidentiary purposes.

6

16.   Again on January 16, the suspect called the undercover at approximately 5:00PM.   The suspect again asked where the undercover's "daughter" was.   The suspect indicated he keeps his child pornography collection in "his favorites" file on his computer.   The suspect stated that he works in the security field and has Sundays and Mondays off from work.   The suspect indicated he communicates with others about incest.   The suspect stated he would like to use his web camera and have the undercover's "daughter" watch as he masturbates.   The suspect discussed his desire to travel to Florida to meet the undercover and his "daughter".   The phone call was digitally recorded for evidentiary purposes.

17.   On January 28, 2008 at 4:49PM, the undercover observed the suspect in the "Open minded Parents" chat room on America Online.   The undercover initiated an instant message with the suspect by saying hello.   The suspect asked the undercover to call him, however no call was initiated.   The instant messaging was saved for evidentiary purposes.

18.   On January 28, 2008, at 5:56PM, the suspect initiated an instant message with the undercover.   The suspect wanted to know if the undercover's "daughter" was home.   The instant message ended at 6:01PM and was saved as evidence in this investigation.

7

19. On February 4, 2008 at 3:29PM, the undercover was online utilizing America Online as his Internet service provider. At 3:29PM, the suspect initiated an instant message with the suspect. The suspect immediately wanted to know if the undercover's "daughter" was home. The undercover indicated she was not home. The suspect asked the undercover if he had Yahoo instant messenger, which allows a person who has a web camera to view that particular individual. The suspect continued to ask the undercover when his "daughter" would be home. The undercover reminded the suspect his "daughter" was eleven years old. The undercover indicated he had Yahoo instant messenger and the suspect suggested communicating via Yahoo.

20. On February 4, 2008 at 5:00PM, the suspect and the undercover began communicating via instant messenger on Yahoo. The suspect's screen name first appeared as "rmclaug1960". However, the undercover invited the suspect to become a "friend" on his buddy list. This feature allows the person's registration name to appear on the chat. The name appeared as "Richard McLaughlin". The suspect asked again if the undercover's "daughter" was home. The suspect turned on his web camera and allowed the undercover to see him. The undercover informed the suspect his "daughter" would be home shortly.

8

21.   Again on February 4, the suspect called the undercover.  The undercover told the suspect his "daughter" was home.  The suspect allowed the undercover to view the suspect via web camera. The suspect also wanted to talk to "the child".  The undercover utilized Sheriff's Office Cadet Tabitha Lendon for this undercover operation. Lendon portrayed the undercover's "daughter".  The suspect was able to say hello to the "daughter".  The suspect began to masturbate in front of the camera and stated that he wanted the "daughter" to view him on the web camera.  The suspect asked the undercover to remove the "daughter's" underwear.  The suspect asked the undercover to perform oral sex on the child while he was on the telephone with the suspect. During this encounter, the undercover could see the suspect's face. During this communication, the suspect was using a web camera and could be viewed by the undercover, while the undercover was using a telephone and could not be viewed by the suspect. This communication was digitally saved for evidentiary purposes.

22.   On February 6, 2008, Detective Spector sent a subpoena to America Online requested subscriber information and IP connection logs for the suspect's screen name of Rmclaug1960.

On February 7, 2008, Detective Spector received information back from America Online.   The names on the account are Jenel and Richard McLaughlin, 62 Veterans Avenue in Everett, Massachusetts.

9

23. On February 11, 2008 at approximately 7:00PM, the undercover received a phone call from the suspect. During the phone call the suspect said "my cock gets hard for kids". The suspect said his Internet service was disconnected due to his wife not paying the phone bill. The suspect asked the undercover if he picked up a camera yet. The undercover told the suspect he was having financial problems and couldn't afford a camera. The suspect offered to send money to the undercover to pay for the camera. The undercover provided the suspect an undercover address in St. Lucie County. The suspect said he would send $40.00 to the undercover. The suspect said the undercover should purchase the camera at Target. The suspect said the camera comes with computer software and is Windows driven. The suspect said, "I want to see her little pussy you know I do". The suspect offered to send more money at a later date so that the undercover could purchase sexy panties for the "child". The suspect instructed the undercover that once the camera was connected, he (the suspect) wanted the undercover to do the following: "lift up her dress, let me see her little pussy, and we can all play". The suspect said he would also like to see the undercover give his "daughter" oral sex on the web camera. The undercover told the

10

suspect he has never done anything like this before. The suspect said, "we don't have to do it right away we can just lean into it". This isn't the entire content of the phone conversation; however it was digitally recorded and preserved for evidentiary purposes.

24. On February 15, 2008, at approximately 6:20PM, the undercover received a phone call from the suspect. During the phone call the suspect indicated he recently communicated with a fourteen-year-old girl over the telephone. The suspect said he lost the undercover's address and couldn't send money to him. The suspect asked for the address again. The undercover told him he would contact him the next day.

On February 16, 2008 at 1:45PM, the undercover called the suspect's cell phone. The suspect didn't answer, however the undercover left his undercover address on the voice message system.

25. On February 18, 2008, the suspect called the undercover. The suspect indicated his Internet service was still disconnected. The suspect said "I need fucking kids man, my fucking cock been driving for kids". The suspect asked the undercover if his "daughter" was home. The undercover asked the suspect if he sent any money, and the suspect said he was going to send it that day. This phone call was digitally preserved as evidence in this investigation.

26. On February 18, 2008, the suspect called the undercover. The suspect said,"I want to get that money to you so you can buy a nice cam and fucking show me her little fucking pussy while I jerk off and talk to you guys". This isn't the entire content of the phone conversation, however it was digitally saved as evidence in this investigation.

27. On February 25, 2008 at 12:24PM, the suspect left a message on the undercover's phone line. The suspect said he now had Internet access and would be back online. The suspect said he was now using DSL cable for his Internet connection. The suspect said he was sending $20.00 to the undercover so the undercover could purchase a web camera. The suspect said, "I definitely want the fucking web cam for you and your daughter to fuck around with me so give me a call bye".

28. On February 25 at 3:27PM, the undercover received an instant message from the suspect's screen name. The undercover first indicated to the suspect that he was busy. Later in the instant message, the suspect wanted to know if the undercover's "daughter" was home because his web camera was working. The suspect also wrote he sent $20.00 to the undercover. While instant messaging, the suspect sent two links to two web sites. The first link was called "TOP 100 NUDE GIRLIES". The undercover opened the link and observed a web site

12

that contained numerous prepubescent nude females in various poses. These images are called child erotica and under both Florida State law and Federal law, they would not be considered child pornography. The second link was called "Zube.biz-TINY LITTLE ONES CHILD SEX GALLERIES!". The undercover opened this link.  It contained numerous images of prepubescent children in various poses.  Some of the poses contained children engaged in sexual acts.  These images are lewd and lascivious in nature and are considered child pornography of Florida State law and Federal law.

29.    During the investigation, Detective Spector contacted Trooper Matthew Murphy of the Massachusetts State Police and requested his assistance.  Trooper Murphy sent me photographs of Richard McLaughlin, Sr. and Richard McLaughlin, Jr.  The suspect was identified as Richard D. McLaughlin, Sr. with a date of birth of March 29, 1960.  This identification was based on the web camera capture from February 4, 2008.

30.    On March 3, 2008 at approximately 5:00pm, the suspect called the undercover. During the conversation, the suspect indicated that he had sent the money for the web camera and was going to send more. The suspect also stated that he wanted to masturbate and asked if the undercover's "daughter" was available. The undercover responded that she was not available and the call was terminated.

13

This phone call was not recorded as it was unexpected and the undercover was out of town working on a separate case.

31.   Further investigation revealed that the suspect, Richard McLaughlin, Sr., works for the Department of Homeland Security, Transportation Security Administration (TSA), at Logan International Airport in Boston, MA.

Further, your affiant sayeth naught.

CHRISTOPHER S. HARVEY
Senior Special Agent
Immigration and Customs
Enforcement


Sworn and subscribed to before me this _____ day of March 2008.

FRANK J. LYNCH, Jr.
United States Magistrate Judge

14